1
2
3
4
5
6           **UNITED STATES DISTRICT COURT**
7       **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8

9 ROBERT GONZALES SAENZ,        No.  1:11-cv-01872-AWI-SKO (PC)

10       Plaintiff,       **FINDINGS AND RECOMMENDATIONS TO DENY BOTH DEFENDANT'S AND**

11    v.       **PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

12 CHAVEZ, et al.,

13       Defendants.       **(Docs. 32, 36, 55, 56)**

14       **TWENTY-ONE (21) DAY DEADLINE**

15

16 **I.**     **Background**

17       Plaintiff, Robert Gonzales Saenz, a state prisoner proceeding *pro se* and *in forma*

18 *pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 10, 2011.

19 Plaintiff is seeking damages against Defendant, Correctional Officer B. Lacey, on the following

20 claims found cognizable in the Second Amended Complaint (Doc. 15):  (1) use of excessive

21 physical force on March 12, 2010, in violation of the Eighth Amendment; and (2) retaliation, in

22 violation of the First Amendment, via the use of physical force on March 12, 2010, and cell

23 searches which took place on March 13, 2010 and August 7, 2010, with concomitant property

24 confiscation.  (*See* Doc. 16.)  The events Plaintiff complains of arise out of events which occurred

25 in 2010 at the Sierra Conservation Center in Jamestown, California.[1]

26 ///

27

28 ───────────────────
[1] Plaintiff is now incarcerated at the Correctional Training Facility in Soledad.

On July 20, 2015, Plaintiff filed a motion for summary judgment. Fed. R. Civ. P. 56(c). (Doc. 32.) Defendant filed an opposition on August 19, 2015, and Plaintiff filed his reply on September 3, 2015. (Docs. 46, 51-53.) Defendant filed a cross-motion[2] for summary judgment on July 20, 2015, and Plaintiff filed his opposition on August 17, 2015; Defendant replied on August 24, 2015. (Docs. 36, 44, 45, 49.) Plaintiff's and Defendant's cross-motions have been submitted on the record without oral argument. Local Rule 230(*l*). For the reasons that follow, it is recommended that both Plaintiff's and Defendant's motions be denied.

## II.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

Rule 56 also allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

---

[2] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Further, "[a] verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'"  *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d

3

454, 460 (9th Cir. 1995); *Lew*, 754 F.2d at 1423.  If Plaintiff states that the facts in the complaint are true under penalty of perjury, the pleading is "verified."  *Schroeder*, 55 F.3d at 460 n. 10. Additionally, Plaintiff is entitled to liberal construction of his filings because he is a prisoner proceeding *pro se*.  *Thomas*, 611 F.3d at 1150.

**III.    Discussion**

The motions for summary judgment are addressed in accordance with Plaintiff's separate claims -- excessive force and retaliation.

**A.    Eighth Amendment Standards -- Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When a prison security measure is undertaken in response to an incident, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Id.* at 6.

The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson*, 503 U.S. 1.  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Whitley* at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* at 9-10 (internal quotations marks and citations omitted).  Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment.  *Id.*; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth

1   Amendment excessive force standard examines *de minimis* uses of force, not de minimis

2   injuries)).  "Injury and force [] are only imperfectly correlated, and it is the latter that ultimately

3   counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an

4   excessive force claim merely because he has the good fortune to escape without serious injury."

5   *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178-79 (2010).

6   **1.  Plaintiff's Motion for Summary Judgment**

7   Plaintiff submits evidence that, on March 12, 2010, Defendant performed his floor officer

8   duty of sorting mail in the Tuolumne Facility, Inmate Housing Unit No. 5 ("5T") and distributed

9   mail to inmates on the upper tier of 5T.  (Doc. 33, P's MSJ, pp. 2-3, citing Plaintiff's Undisputed

10   Fact ("PUF") Nos 5-8.)  Plaintiff and inmate ("IM") Dimarino were assigned to cell 228 on the

11   upper tier of 5T.  (*Id.*, citing PUF No 9.)  Prisoner count occurs at 4:30 p.m. and there is to be no

12   movement of inmates during prisoner count.  (*Id.*, citing PUF Nos 10-14.)  It takes approximately

13   30 minutes from beginning to the final "count clear."  (*Id.*, citing PUF No 15.)  During this

14   interval, Defendant distributes mail to inmates on the upper tier.  (*Id.*, p. 4.)  On March 12, 2010,

15   Defendant came to Plaintiff's cell and called his and his cellmate's names, to which IM Dimarino

16   rose, went to the cell door, replied with the last two numbers in his IM number and Plaintiff

17   responded likewise from his bed.  (*Id.*, citing PUF Nos 16-17.)  Defendant waved a response to an

18   inmate appeal ("602") which Plaintiff had filed and walked away.  (*Id.*)

19   After mail was distributed, Defendant returned to the housing unit office and, before the

20   "count clear" announcement, had the control booth officer electronically open the door to

21   Plaintiff's cell and ordered Plaintiff to the unit office.  (*Id.*, citing PUF Nos 18, 19, 20.)  Plaintiff

22   complied only to be greeted with verbal assaults from Defendant and another officer during

23   which Defendant stated "Hey stupid, next time get your fucken [sic] ass to the door" and "I'm the

24   wrong bull to fuck with."  (*Id.*, citing PUF Nos 21, 22.)  During this, Defendant displayed

25   Plaintiff's 602 response (that he previously waived at the door of Plaintiff's cell) which was a

26   staff misconduct complaint against Defendant's 5T floor officer partner.  (*Id.*, citing PUF No 23.)

27   Defendant told Plaintiff his 602 was going back to the mailroom and the other officer ordered

28   Plaintiff back to his cell.  (*Id.*, citing PUF Nos 24, 25.)

Plaintiff asserts that there is no rule requiring inmates to accept incoming mail and/or prohibiting refusal of mail.  (*Id.*, citing PUF Nos 26, 27.)  Before Plaintiff reached his cell, Defendant ordered Plaintiff to go to the "grill gate" by the sally-port.  (*Id.*, citing PUF No 28.)  When he arrived there, Defendant grabbed Plaintiff by his left arm, pulled him into the sally-port, slammed Plaintiff head-first into the cinderblock wall, threw his entire body weight (6'2" and 250 lbs) onto Plaintiff (5'6" and 160 lbs), grabbed Plaintiff's left wrist and twisted his wrist and arm violently while pulling it to Plaintiff's upper back/neck area which caused severe pain.  (*Id.*, pp. 5-6 citing PUF Nos 29-33.)  While holding Plaintiff in that position, defendant threatened Plaintiff, making statements such as:  "I'm gonna trash your cell," "I know you've got something in there that'll be a third-strike you fucken piece of shit," "Fuck with my partners, your [sic] fucking with the wrong bull, I'm the wrong bull to fuck with."  (*Id.*, p. 6, citing PUF Nos 34, 35.)  This last statement referred to 602s and staff misconduct complaints Plaintiff had filed against Defendant's 5T floor officer partner.  (*Id.*, citing PUF Nos 40-42.)

Plaintiff then requested medical care due to extreme pain in his left arm and wrist, which Defendant refused.  (*Id.*, citing PUF Nos 36, 37.)  Plaintiff submits he was in pain the entire weekend and submitted a request for medical treatment and was seen on Monday morning.  (*Id.*, citing PUF Nos 38, 39.)

### a. **Defendant's Opposition**

Defendant responds that while Plaintiff has alleged the elements required to state an Eighth Amendment excessive force claim, the pleadings and record of this action and Defendant's declaration establish material disputes of fact concerning the events of March 12, 2010, and whether any force was used by Defendant Lacey against Plaintiff. (Doc. 46, Def. Opp, p. 3, citing Lacey Declaration, ¶¶ 4-9.)  Defendant notes he submitted a declaration stating that he not only used no force -- excessive or otherwise -- against Plaintiff on March 12, 2010, he did not even have any physical contact with Plaintiff's person on that date.  (*Id*. at ¶¶ 8-9.)  Defendant's evidence further shows that after Defendant counseled him, Plaintiff walked back to his cell without incident.  (*Id*.)  Defendant argues that Plaintiff's motion for summary judgment should be denied because disputes of material fact exist.

6

1

## 2. **Defendant's Cross-Motion for Summary Judgment**

2
      In support of his motion for summary judgment, Defendant presents evidence that

3   Plaintiff was housed in the 5T housing unit during the time period relevant to this action.  (Doc.

4   36-1, Def. MSJ, 2:8-3:17, citing Defendant's Undisputed Fact ("DUF") No. 1.)  During this same

5   time period, Defendant was employed by the California Department of Corrections and

6   Rehabilitation ("CDCR") as a Correctional Officer and served as a Floor Office in Plaintiff's

7   housing unit.  (*Id,* citing DUF No. 2.)

8
      According to Defendant, in the evening of March 12, 2010, Defendant counseled Plaintiff

9   regarding his refusal to accept incoming mail.  (*Id.,* p.2, citing Lacey Declaration ¶ 2.)  While

10  Plaintiff alleges that following this verbal interaction with Defendant, Defendant forcefully

11  slammed him into a wall and twisted his left wrist and arm, Defendant contends he did not use

12  force or even touch Plaintiff on March 12, 2010.  (*Id.*)

13

## 1. **Plaintiff's Opposition**[3]

14
      Plaintiff asserts that, on March 12, 2010, Defendant created a hostile and harassing

15  environment at mail delivery by refusing to deliver Plaintiff's mail.  (Doc. 44, Plnt. Opp., p. 12.)

16  Plaintiff contends that Defendant controlled and escalated the situation when he directed another

17  officer to electronically open Plaintiff's cell door during prisoner count, in violation of

18  Department standards that dictated there is to be "no inmate movement" during count.  (*Id.*, pp.

19  12-13.)  Plaintiff then followed Defendant's order to go down-stairs to the unit office where he

20  was verbally attacked by Defendant and another officer.  (*Id.*, p. 13.)  Plaintiff asks the Court to

21  consider his complete compliance with Defendant's orders to report to the unit office, absorb a

22  verbal attack without comment, return to his cell when ordered, and comply with Defendant's

23  order to approach his position at the "grill-gate."  (*Id.*)

24
      Plaintiff asserts that he is 5'6" tall and weighs approximately 160 lbs and that Defendant

25  stands 6'2" tall and weighs approximately 250 lbs. (*Id.*, p. 14.)  Plaintiff further asserts that

26
----
[3] (Doc. 44, P's Opp to MSJ.)  Further, Plaintiff submitted a separate statement of facts (Doc. 69, p. 5) which is

27  supported by Plaintiff's declaration (*id.*, at pp. 23-24).  Facts that do not reference a "PUF No." are supported by
    statements in Plaintiff's declaration.  Plaintiff's First Amended Complaints is also verified and functions as a

28  declaration to the extent the allegations are based on his personal knowledge of facts admissible in evidence.  *Jones*,
    393 F.3d at 922-23.

Defendant slammed him face first into the cinder block wall and lifted Plaintiff while twisting Plaintiff's left upper extremity and forcibly pulling it up his back nearing his neck area. (*Id.*, pp. 13-15.) Plaintiff contends he received more than just acetaminophen for treatment of his wrist/arm injury and was also given a preexisting prescription for Naproxen, and the nurse advised him to limit the use of his left arm, prohibited exercise, and directed him not to hold heavy objects with it for at least 10-days. (*Id.*, pp. 15-16.) Plaintiff further asserts that he previously had a tumor removed from his left wrist (for which he was prescribed Naproxen) such that he experienced severe pain when Defendant used his "vice-like grip" and twisted his left upper extremity. (*Id.*, p. 16.)

### 3. Findings

#### a. Plaintiff's Motion

Plaintiff bears the burden on moving for summary judgment of demonstrating that no reasonable trier of fact could find other than for him. *Soremekun*, 509 F.3d at 984. While Plaintiff presents his perception of the events which occurred on the evening of March 12, 2010, he does not present any evidence to negate Defendant's version of events. While Plaintiff's motion is supported by his declaration and some exhibits, neither precludes a finding which accepts Defendant's version and finds in his favor.

Since Plaintiff has not met his burden to be awarded summary judgment on his excessive force claim against Defendants, his motion for summary judgment on this claim must be denied.

#### b. Defendant's Motion

Since Defendant does not bear the burden of proof at trial, he need only prove an absence of evidence to support Plaintiff's case to be granted summary judgment. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Defendant presents evidence that he did not engage in any act of force against Plaintiff on March 12, 2010, and that he merely counseled Plaintiff about accepting his mail at the sally-port on that date.

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact as to Plaintiff's claim that he used excessive force against Plaintiff. The

1   burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists.

2   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

3   In both Plaintiff's own motion and opposition, his declaration suffices to create a triable

4   issue of fact -- that when he obeyed Defendant's order to approach the grill gate at the sally-port,

5   Defendant pushed him into the cinderblock wall and twisted his left upper extremity behind

6   Plaintiff's back and pulled it so that his wrist neared his neck area -- which shows malicious and

7   sadistic acts by Defendant. *Hudson*, 503 U.S. at 9. The contrast between Defendant's and

8   Plaintiff's versions of the incident creates a triable issue of fact as to whether Defendant used

9   excessive force on Plaintiff. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003);

10  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436,

11  1442 (9th Cir. 1995). Defendant's emphasis on the minimal medical treatment Plaintiff received

12  for his alleged injuries from this incident is misplaced since the Eighth Amendment excessive

13  force standard examines *de minimis* uses of force, not *de minimis* injuries. *See Oliver*, 289 F.3d at

14  628.

15  Finally, when dealing with excessive force claims, summary judgment is rarely

16  appropriate. "Because [the excessive force inquiry] nearly always requires a jury to sift through

17  disputed factual contentions, and to draw inferences therefrom, we have held on many occasions

18  that summary judgment or judgment as a matter of law in excessive force cases should be granted

19  sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of*

20  *Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that

21  the reasonableness of force used is ordinarily a question of fact for the jury.").

22  Thus, Defendant's motion for summary judgment on Plaintiff's excessive force claim

23  should be denied.

24  **B.      First Amendment -- Retaliation**

25  Prisoners have a First Amendment right to file grievances against prison officials and to

26  be free from retaliation for doing so. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir.

27  2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009). A retaliation claim has five

28  elements. *Id.* at 1114.

First, plaintiff must show that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Second, plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, plaintiff must show a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, plaintiff must show that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes,* 408 F.3d at 568 (internal quotation marks and emphasis omitted). Fifth, plaintiff must show "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

While Plaintiff need only show facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engaging in a protected activity and the retaliatory conduct must *not* have reasonably advanced a legitimate penological goal. *Brodheim*, 584 F.3d at 1271-72 (citations omitted).

### 1. **Plaintiff's Motion for Summary Judgment**

Plaintiff's evidence shows that Defendant came to Plaintiff's cell delivering mail on March 12, 2010 and called Plaintiff's and his cellmate's names, Plaintiff's cellmate rose, went to the cell door, and replied with the last two numbers in his IM number while Plaintiff uttered the last two of his IM number from his bed. (Doc. 33, citing PUF Nos 16-17.) Defendant held up a response to a 602 of Plaintiff's and walked away. (*Id.*)

After mail was distributed, Defendant returned to the housing unit office. (*Id.*, citing PUF Nos 18, 19, 20.) While awaiting the "count clear" announcement, Defendant had the control booth officer electronically open the door to Plaintiff's cell and ordered Plaintiff to the unit office.

10

1    (*Id.*)  Plaintiff complied only to be greeted with verbal assaults from Defendant and another

2    officer during which Defendant stated "Hey stupid, next time get your fucken [sic] ass to the

3    door" and "I'm the wrong bull to fuck with."  (*Id.*, citing PUF Nos 21, 22.)  Defendant displayed

4    Plaintiff's 602 response which pertained to a staff misconduct complaint Plaintiff had filed

5    against Defendant's 5T floor officer partner.  (*Id.*, citing PUF No 23.)  Defendant told Plaintiff his

6    602 was going back to the mailroom and the other officer ordered Plaintiff back to his cell.  (*Id.*,

7    citing PUF Nos 24, 25.)  Plaintiff again asserts that there is no rule requiring inmates to accept

8    incoming mail.  (*Id.*, citing PUF Nos 26, 27.)

9        Before Plaintiff arrived back at his cell, Defendant ordered him to go to the "grill gate" by

10   the sally-port.  (*Id.*, citing PUF No 28.)  This is when the alleged incident of excessive force,

11   which was previously discussed took place.

12       The following day, Plaintiff asserts Defendant made good on the threats he made the night

13   before when he and another 5T floor officer entered Plaintiff's cell and singled out Plaintiff's

14   personal property which Defendant confiscated and/or destroyed.  (*Id.*, p. 7, citing PUF Nos 41-

15   48.)  When Plaintiff and his cellmate, IM Dimarino, reentered their cell, they observed that

16   Plaintiff's property had been searched and both coffee and laundry detergent had been thrown on

17   Plaintiff's sheets, blankets, and mattress, but IM Dimarino's property had been left untouched.

18   (*Id.*, pp. 7-8, citing PUF Nos 49, 50.)  Plaintiff asserts Defendant did not give him a receipt for the

19   items he confiscated, so Plaintiff filed a 602 on this incident which was granted because neither a

20   confiscation receipt, nor the confiscated items could be located to resolve whether they had been

21   altered.  (*Id.*, p. 8, citing PUF Nos 50-56.)[4]

22       Plaintiff also asserts that, on August 7, 2010, Defendant and another 5T floor officer

23   entered his cell and again singled out Plaintiff's personal property while talking about several of

24   Plaintiff's 602s.  (*Id.*, pp. 11-12, citing PUF Nos 75-89.)  Various items of Plaintiff's property

25   ─────────────────────────

26   [4] Plaintiff contends he filed a 602 regarding some medication which Defendant also allegedly confiscated on March
     13th and points out various contradictions between the evidence noted in the 602s and the declaration Defendant

27   submitted in support of his motion for summary judgment.  (Doc. 55.)  Plaintiff therefore moves to strike
     Defendant's declaration.  (*Id.*)  However, this is not basis for striking Defendant's opposing declaration; Plaintiff may

28   instead question its veracity before the trier of fact.  Thus, Plaintiff's motion to strike Defendant's declaration is
     DENIED.

1  were removed and again, none of the property of his then cellmate (IM Dunman) was touched.

2  (*Id.*; Doc. 56, p.4.)

3                    **a. <u>Defendants' Opposition</u>**

4        Defendant asserts that disputes of material fact exist concerning what, if any, action

5  Defendant took against Plaintiff because of Plaintiff's protected conduct.  Defendant denies

6  Plaintiff's allegations that he searched Plaintiff's cell and impermissibly confiscated or destroyed

7  his property on March 13, 2010, or August 7, 2010, in retaliation for Plaintiff having filed 602s.

8  (Doc. 46, pp. 3-4, citing Lacey Declaration, ¶¶ 10-16.)  Defendant asserts that when he searched

9  Plaintiff's cell on March 13, 2010, it was because he was required to search three cells per day

10  which constituted legitimate penological justification for the cell search.  (*Id.*, citing Lacey

11  Declaration ¶ 10.)  Defendant contends that on March 13, 2010, he only confiscated contraband

12  and he did not search Plaintiff's cell on August 7, 2010.  (*Id.*, citing Lacey Declaration ¶¶ 13, 16.)

13                    **2. <u>Defendant's Motion for Summary Judgment</u>**

14        In support of his motion for summary judgment, Defendant states that on March 13, 2010,

15  at 3:30 p.m., in accordance with CDCR Department Operations Manual ("DOM") Section

16  52050.16, which requires that a minimum of three cells in each housing unit be searched daily, he

17  performed a random search of Plaintiff's cell, # 228, for items of contraband.  (Doc. 36, pp. 2-3

18  citing DUF No. 3.)  Plaintiff was not present for, nor did he witness, the cell search that day.  (*Id.*,

19  citing DUF No. 4.)

20        During the March 13, 2010 search of Plaintiff's cell, Defendant confiscated an altered CD

21  player/radio, an altered hot pot, and articles of altered state clothing belonging to Plaintiff.  (*Id.*, at

22  p. 3, citing DUF No. 5.)  No other items belonging to Plaintiff were removed from his cell by

23  Defendant during this cell search.  (*Id.*)  Defendant issued Plaintiff a receipt for the confiscated

24  property.  (*Id.*, citing DUF No. 6.)

25        On March 13, 2010, Plaintiff also submitted a Form 7362 Health Care Services Request

26  Form in which he complained that Defendant placed him on the wall the previous day and twisted

27  his left arm and raised it to the upper middle of his back causing extreme pressure on his left

28  wrist.  (*Id.*, citing DUF No. 7.)  Plaintiff was medically evaluated for these complaints once, on

March 16, 2010.  (*Id.*, citing DUF No. 8.)  During this evaluation, only tenderness to Plaintiff's left wrist was noted.  (*Id.*)  Plaintiff was simply advised to take Acetaminophen as needed for pain for the next hours and was not referred to a physician for medical evaluation.  (*Id.*)

Defendant contends he was neither present nor participated in any search of Plaintiff's cell on August 7, 2010.  (*Id.*, citing DUF No. 9.)  Plaintiff was not present for and did not witness the search of his cell on August 7, 2010.  (*Id.*, citing DUF No. 10.)  Defendant further contends no inmate or CDCR staff member witnessed Defendant Lacey's conduct during any cell search of Plaintiff's cell on March 13, 2010, or August 7, 2010.  (*Id.*, citing DUF No. 11.)

### 1. **Plaintiff's Opposition**

In his opposition, Plaintiff asserts that the regular duties of Defendant and his partner included delivering mail in Plaintiff's housing unit.  (Doc. 44, P's Opp to MSJ, p. 20.)  Plaintiff contends that on March 12, 2010, Defendant's partner alerted Defendant of a response to 602 that Plaintiff filed against Defendant which was in the institutional mail.  (*Id.*)  Plaintiff contends Defendant became angry and had Plaintiff called out of his cell during evening count when there was to be "no inmate movement."  (*Id.*, at p. 21.)  Defendant then ordered him to approach the "grill-gate" where the previously discussed alleged incident of excessive force took place.  (*Id.*, at pp. 13-15.)  Throughout the course of these events, Defendant threatened him, making statements such as:  "I'm gonna trash your cell;" "I know you've got something in there that'll be a third-strike you fucken [sic] piece of shit;" "Fuck with my partners, your fucking with the wrong bull, I'm the wrong bull to fuck with."  (*Id.*, pp. 21-22.)  Plaintiff understood that Defendant was referring to 602s and staff misconduct complaints Plaintiff had filed against Defendant and other officers.  (*Id.*)

Plaintiff argues that the very next day, Defendant carried through on the above threats when he and another 5T floor officer entered Plaintiff's cell and singled out Plaintiff's personal property which was confiscated and/or destroyed, including Plaintiff's prescribed medication.  (*Id.*, pp. 22, 23.)  Plaintiff asserts that Defendant failed to give him a receipt for the confiscated property which was borne out by the ruling in Plaintiff's favor on the 602 he filed regarding this incident.  (*Id.*, p. 23.)

13

Plaintiff asserts that Defendant again searched his cell on August 7, 2010, and during both of these searches, his cellmates' property was left untouched but Plaintiff's property was searched, various of Plaintiff's items were confiscated, and Plaintiff's side of the cell was left in shambles. (*Id.*, p. 24.)  Plaintiff asserts that Defendant's action in the incident at the sally-port on March 12, 2010, and the searches of his cell on March 13, 2010, and August 7, 2010, took place in retaliation for Plaintiff's protected activity of filing 602s. (*Id.*, p. 26.)  Plaintiff asserts that these actions by Defendant were intended to and chilled his right to use the 602 process. (*Id.*)

### 3. <u>Findings</u>

#### a. <u>Defendant's Motion</u>

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

Defendant's evidence shows that, on March 12, 2010, he spoke with Plaintiff regarding his refusal to accept incoming mail and did not use any force on Plaintiff.[5]  On March 13, 2010, Defendant searched Plaintiff's cell as one of three cells required to be searched each day by the DOM § 52050.16 and that he was not involved in the search of Plaintiff's cell on August 7, 2010. The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)).

The Court finds that, as to Plaintiff's claim that Defendant subjected him to excessive force and searched his cell on both March 13, 2010, and August 7, 2010, in retaliation for Plaintiff's protected inmate grievance activity, Defendant has met his initial burden of informing the Court of the basis for his motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact on Plaintiff's retaliation claim.  The burden, therefore, shifts to Plaintiff to establish that a genuine issue as to any material fact exists.  *See Matsushita*

---

[5] As previously discussed, a material dispute of fact exists regarding whether excessive force was utilized during this incident.

1 │ *Elec. Indus. Co.* 475 U.S. at 586.

2 │ **b.  Plaintiff's Motion and Opposition to Defendant's Motion**

3 │ Since they rely on the same arguments and evidence, Plaintiff's opposition to Defendant's

4 │ motion for summary judgment, in which he must establish the existence of a genuine issue of

5 │ material fact, *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, and his own motion for summary

6 │ judgment, where he bears the burden of demonstrating that no reasonable trier of fact could find

7 │ other than for him, *Soremekun*, 509 F.3d at 984, are addressed jointly.

8 │ Plaintiff's evidence shows that Defendant had knowledge of Plaintiff's protected inmate

9 │ appeal activity, at least as of March 12, 2010, when the entire scenario at issue in this case began

10 │ with Defendant's handling of a response to one of Plaintiff's 602s in the nightly mail delivery.

11 │ (*See* Doc. 34, p. 2.)  Defendant submits neither argument, nor evidence, that he was not aware of

12 │ Plaintiff's 602 activity.  This shows that Plaintiff engaged in protected activities of filing 602s --

13 │ of which Defendant was aware -- sufficient to meet the first element of a retaliation claim.  *Rizzo*,

14 │ 778 F.2d  at 532; *Valandingham*, 866 F.2d 1135; *Pratt*, 65 F.3d at 807.

15 │ Plaintiff's verified allegations that Defendant roughed him up on the evening of March 12,

16 │ 2010, and searched/ransacked/confiscated his property in his cell on March 13, 2010, and August

17 │ 7, 2010, suffice to show that Defendant took adverse action against him.  *Rhodes*, at 567.  Further,

18 │ these adverse actions by Defendant would chill or silence a person of ordinary firmness from

19 │ future protected activities.  *Rhodes*, 408 F.3d at 568.

20 │ As to Defendant's motive behind his adverse actions, in this Circuit, Plaintiff need "only

21 │ put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a

22 │ genuine issue of material fact . . . ."  *Brodheim*, 584 F.3d at 1271 (citing *Bruce v. Ylst*, 351 F.3d

23 │ 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted).  This requires Plaintiff to offer

24 │ either direct evidence of retaliatory motive or at least one of three general types of circumstantial

25 │ evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2)

26 │ expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendant

27 │ for the adverse action were false and pretextual.  *McCollum v. California Department of*

28 │ *Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (citing *Allen v. Iranon*, 283

1   F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).  Direct evidence of improper motive

2   is only rarely available, and this case presents no exception.  *Watison*, 668 F.3d at 1114;

3   *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999).

4   Thus, the inquiry is whether Plaintiff has presented sufficient circumstantial evidence to raise a

5   triable issue of fact.

6          Defendant's comments during the incident at the sally-port area ("I'm gonna trash your

7   cell;" "I know you've got something in there that'll be a third-strike you fucken [sic] piece of

8   shit;" "Fuck with my partners, your fucking with the wrong bull, I'm the wrong bull to fuck

9   with." (Doc. 44, pp. 21-22)) after Defendant waived a reply to Plaintiff's 602 during mail delivery

10  that evening, show by proximity and expressed opposition that Defendant's alleged actions of

11  applying unnecessary force at the sally-port and in searching Plaintiff's cell the very next day,

12  March 13, 2010, were performed in retaliation for Plaintiff's protected activities.  Defendant's

13  noted expressions in opposition to Plaintiff's protected activities on the evening of March 12,

14  2010, suffice to show retaliatory motive for the August 7, 2010, search of Plaintiff's cell.

15         The final element to be established is whether the retaliatory conduct reasonably advanced

16  a legitimate penological goal.  *Brodheim*, 584 F.3d at 1271-72 (citations omitted).   Each

17  allegedly retaliatory incident on which Plaintiff proceeds (i.e the March 12, 2010, incident of

18  excessive force and the March 13, 2010, and August 7, 2010, cell searches) must be separately

19  evaluated.

20         Defendant's evidence shows that on the evening of March 12, 2010, he "counseled"

21  Plaintiff regarding acceptance of incoming mail and used no force on Plaintiff nor had any

22  physical contact with Plaintiff's person at that time.  (Doc. 36-1, p. 2, citing Doc. 36-3, ¶2.)

23  Plaintiff's evidence shows that Defendant shoved him into the cinderblock wall, twisted his arm,

24  and pulled it up behind him towards the nape of his neck while threatening him about his 602

25  activities.  (Doc. 33, citing PUF Nos 18-35.)  Plaintiff's version of events starkly contrasts with

26  Defendant's version.  On summary judgment, this suffices to create a triable dispute of material

27  fact as to both Defendant's actions toward Plaintiff on the evening of March 12, 2010, in the

28  sally-port area and whether they advanced a legitimate penological goal.

1    Defendant's evidence shows that, on March 13, 2010, he searched Plaintiff's cell as

2   required by CDCR policies and procedures.  (Doc. 36-2, DUF 3, Doc. 36-3 ¶¶3-4.)  Defendant

3   evidence also demonstrates that Plaintiff was not present for, and did not witness, the March 13,

4   2010 search of his cell.  (Doc. 36-2, DUF 4, citing Plntf Depo. 24:23-25:1.)  However, Plaintiff's

5   evidence pertaining to the incident the night before, both regarding Defendant's delivery of his

6   mail (a reply to Plaintiff's 602) and the statements Defendant made to Plaintiff while allegedly

7   roughing him up in the sally-port area, sufficiently challenges whether Defendant's actions while

8   conducting the search of Plaintiff's cell were motivated by retaliatory animus, or for penological

9   purposes.  (Doc. 33, citing PUF Nos 18-35.)  While Defendant's points and authorities asserts that

10   the search of Plaintiff's cell on March 13, 2010, was part of required "random" daily searches,

11   Defendant's declaration does not state that Plaintiff's cell was randomly chosen for search that

12   day, nor does he submit any other evidence to show the randomness of its selection.  The mere

13   fact that it was searched the day after the alleged incident of excessive force raises a serious

14   question whether it was selected to be searched on March 13, 2010, out of retaliatory animus or at

15   random.

16    Plaintiff also submits a declaration from his then cellmate, IM Dimarino, stating that

17   during mail delivery the night before, Defendant refused to give Plaintiff  his inter-institutional

18   mail (a 602 form response); the next day, at approximately 2:45 p.m., Defendant and another

19   officer searched their cell for approximately 10 minutes and removed several items of Plaintiff's

20   personal property that IM Dimarino had previously seen and used which had not been altered;

21   that the search solely focused on Plaintiff's personal property, bed area, and lockers; and that the

22   officers did not disturb any of IM Dimarino's property.  (Doc. 34, p. 7.)[6]

23    Defendant asserts he was not involved in the search of Plaintiff's cell on August 7, 2010,

24   and supports this assertion solely via his own declaration.  (Doc. 36-2, DUF 9, Doc. 36-3 ¶7.)

25   Defendant also contends that Plaintiff was not present for, and did not witness, the August 7,

26
_____

[6] While Plaintiff also submitted declarations from other inmates (Doc. 34, pp. 8, 9) they are of little to no value as
27   they only indicated seeing Defendant and another officer enter Plaintiff's cell for 10-15 minutes on March 13, 2010
and thereafter exit with a few items in clear plastic bags -- all of which Defendant admits occurred.  They did not
28   contain statements of personal observation of any actions by Defendant or others during the March 13, 2010 cell
search directed specifically at Plaintiff.

2010, search of his cell.  (Doc. 36-2, DUF 10 citing Plntf Depo. 38:22-40:18.)  Defendant further asserts that, based on Plaintiff's deposition testimony, Plaintiff is unable to identify any inmate or CDCR staff witness who observed Defendant's conduct during any search of Plaintiff's cell on March 13, 2010, or August 7, 2010.  (Doc. 36-2, DUF 11.)  In support of this assertion, Defendant simply cites to 36 pages of Plaintiff's deposition and does not point to a specific page of testimony of evidence as is required on moving for summary judgment.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); L.R. 260.  The Court declines to expend limited resources reading multiple pages of deposition testimony in an attempt to extract specific evidentiary basis for Defendant's assertion.

A cursory review of Plaintiff's deposition transcript also reveals that Plaintiff did, in fact, identify IMs Dimareno, Mayen, and Munoz as witnesses that Defendant and another officer entered and exited Plaintiff's cell when it was searched on March 13th.  (Doc. 36-2, pp. 34-37.) The declarations that Plaintiff submitted by each of these IMs were discussed during Plaintiff's deposition.  (*Id.*)  At his deposition, Plaintiff also named IMs Fisher, Hubbard, and K'Napp as witnesses who saw Defendant and another officer enter and exit Plaintiff's cell when it was searched on August 7, 2010.  (*Id.*, at pp. 47-49.)  Plaintiff admitted that none of these IMs could see what went on inside his cell on either date, but stated that they all saw Defendant and another officer enter and exit Plaintiff's cell on the respective dates.  (*Id.*, pp. 34-37, 47-49.)

Plaintiff belatedly submitted a declaration from IM Dunman, who was his cellmate in August of 2010.  (Doc. 56.)[7]  IM Dunman's declaration states that he was celled with Plaintiff in August of 2010; Defendant searched their cell on August 7, 2010; Plaintiff's locker area and bunk were thoroughly searched and left in a disheveled state; his locker area and bunk were untouched; and none of his property was taken.  (*Id.*)  IM Dunman's declaration fails to state any personal knowledge to support his assertion that Defendant conducted the search of their cell (i.e., he saw Defendant enter or exit their cell on that date, or exit their cell carrying confiscated items).  There is, however, a similarity between the aftermath in their cell described by IM Dunman and IM

---

[7]  Plaintiff filed a motion with IM Dunman's declaration for its late submission.  (Doc. 56.)  Defendant filed neither an opposition nor response despite the passing of five months.  Thus, it is considered.

1   Dimarino between the March 13th and the August 7th cell searches in that on both occasions,

2   only Plaintiff's property and side of the cell was searched/tousled and that nothing in their areas

3   or property was disturbed in any way.  (*Compare* Doc. 34, p. 7; Doc. 56, p. 4.)

4          Thus, Plaintiff meets his burden of establishing the existence of a triable issue of fact to

5   defeat Defendant's motion for summary judgment.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

6   However, he falls short of meeting his burden in moving for summary judgment to present

7   evidence which precludes all adverse findings.  *Soremekun*, 509 F.3d at 984.  Thus, both

8   Plaintiff's and Defendant's motion for summary judgment on Plaintiff's retaliation claims against

9   Defendant should be denied.

10         **C.  Qualified Immunity**

11         "Qualified immunity shields government officials from civil damages liability unless the

12   official violated a statutory or constitutional right that was clearly established at the time of the

13   challenged conduct."  *Taylor v. Barkes*, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting

14   *Reichle v. Howards*, --- U. S. ---, 132 S.Ct. 2088, 2092 (2012).  The qualified immunity analysis

15   requires two prongs of inquiry:  "(1) whether 'the facts alleged show the official's conduct

16   violated a constitutional right; and (2) if so, whether the right was clearly established' as of the

17   date of the involved events 'in light of the specific context of the case.'"  *Tarabochia v. Adkins*,

18   766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).

19   These prongs need not be addressed in any particular order.  *Pearson v. Callahan* 555 U.S. 223

20   (2009).  In determining whether a government official should be granted qualified immunity, the

21   facts are to be viewed "in the light most favorable to the injured party."  *Chappell v. Mandeville*,

22   706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151

23   (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21; *see also Bryan v.*

24   *MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

25         Defendant does not assert that Plaintiff's right to be free from excessive force or from

26   retaliation for protected activities were not clearly established as of 2010.  He instead seeks

27   qualified immunity asserting only that he has shown the evidence does not support Plaintiff's

28   claims against him.  (Doc. 36-1, pp. 8-9.)  As discussed in the preceding sections, there is

1  evidence which, when viewed "in the light most favorable" Plaintiff, not only precludes summary

2  judgment, but may also provide basis for a finding that Defendant engaged in the alleged actions

3  against Plaintiff in retaliation for Plaintiff's protected activities.  Further, "[u]nreasonable force

4  claims are generally questions of fact for a jury" and "qualified immunity is not properly granted"

5  on such claims.  *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).  Thus, Defendant's motion for

6  summary judgment on Plaintiff's excessive force claim based on qualified immunity should be

7  denied.

8  **IV.**     **Conclusion and Recommendation**

9       The Court finds that Plaintiff did not meet his burden on summary judgment as he has

10  failed to affirmatively demonstrate that no reasonable trier of fact could find other than for him,

11  both on his retaliation and excessive force claims.  Further, while Defendant Lacey met his

12  burden on summary judgment, Plaintiff's declarations and evidence create triable issues of fact as

13  to both Defendant Lacey's excessive force actions and possible retaliatory animus as alleged in

14  this action.  Further, "[u]nreasonable force claims are generally questions of fact for a jury,"

15  *Hervey*, 65 F.3d at 791, such that both Plaintiff's and Defendant's motions for summary judgment

16  on Plaintiff's excessive force claim should be denied.

17       Accordingly, for the reasons set forth herein, the Court RECOMMENDS that:

18          1. Plaintiff's motion for summary judgment, filed on July 20, 2015, (Doc. 32), be

19             DENIED;

20          2. Defendant's motion for summary judgment, filed on July 20, 2015, (Doc. 36), be

21             DENIED; and

22          3. This action be set for trial.

23       These Findings and Recommendations will be submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

25  **twenty-one (21) days** after being served with these Findings and Recommendations, the parties

26  may file written objections with the Court.  Local Rule 304(b).  The document should be

27  captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

28  advised that failure to file objections within the specified time may result in the waiver of rights

on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 24, 2016**                              **/s/ Sheila K. Oberto**
                                                     UNITED STATES MAGISTRATE JUDGE